UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | NO.  CV-07-3083-LRS |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | ORDER GRANTING USA'S MOTION |
| | ) | FOR SUMMARY JUDGMENT IN PART |
| $155,000.00 U.S. FUNDS FROM | ) | |
| STERLING SAVINGS BANK ACCOUNT | ) | |
| #:XXXXXXX1308, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BEFORE THE COURT is the United States' Motion for Summary Judgment Pursuant to Rule 56(c) Fed.R.Civ.P., Ct. Rec. 19, filed July 2, 2008 and noted without oral argument for August 4, 2008.  The government asks the court to find that there are no genuine issues as to material fact and that the Defendant funds are subject to forfeiture.

**I. BACKGROUND**

In this action to forfeit and condemn to the use and benefit of the government $155,000.00 U.S. funds from Sterling Savings Bank Account #: XXXXXXX1308 for violations of 31 U.S.C. §5324, Plaintiff alleges that Claimants Trading Post of Pasco, Inc., Daniel Walsh and Judith Walsh engaged in the structuring of a currency transaction on nineteen

ORDER - 1

occasions from September 14, 2006 to August 14, 2007, totaling $155,000.00. The nineteen deposits were all under the $10,000 reporting threshold and they were made in a series of currency deposits at Sterling Savings Bank. See Verified Complaint for Forfeiture *In Rem,* Ct. Rec. 1. Plaintiff concludes that Claimant Daniel Walsh acted with intent to evade reporting requirements that he knew Sterling Savings Bank was required to follow by federal law. Despite the funds being obtained through lawful means, Plaintiff argues that they are subject to forfeiture under 31 U.S.C. §5324. Ct. Rec. 20 at 7-8. Finally, Plaintiff asserts that forfeiture of the funds is not grossly disproportionate to the structuring offenses and the forfeiture does not constitute an excessive fine under the Eighth Amendment. Id. at 9.

Claimant contends that in order to prove that he structured $155,000.00 in funds, the government must prove that he had more than $10,000 available on hand to deposit for each of the 19 deposits at issue. Claimant argues that he chose the amount of deposits for "business needs." Ct. Rec. 28 at 4. Additionally, Claimant asserts that the community interest of his wife should be considered in determining whether the fine imposed is constitutionally excessive. Claimant requests the Court to find that there is a material dispute of fact as to every deposit made by Daniel Walsh sufficient to deny the motion for summary judgment.

## II. FACTS

The material facts underlying the instant motion are largely

ORDER - 2

undisputed.   On February 9, 2005 Daniel Walsh opened business checking account #XXXXXXX1308 with Sterling Savings Bank under the names Trading Post of Pasco, Inc. And Daniel Walsh.   Ct. Rec. 21 at 2.   Between February 11, 2005 and June 30, 2006, Walsh engaged in 31 structured[1] deposits totaling $253,000.   Id. at 6, Attachment A.

Between September 14, 2006 and August 14, 2007, Daniel H. Walsh, the owner of Trading Post of Pasco Inc., deposited, in even dollar amounts, more than $155,000 in cash into one business checking account XXXXXXX1308 through 19 deposits at Sterling Savings Bank, Pasco Branch located in Pasco, Washington.   Analysis of these deposits reflect that Walsh deposited the $155,000 into this account in the name of Trading Post of Pasco, Inc. listing Daniel Walsh as the signatory.   Id. at 2.

More specifically, on September 14, 2006, Walsh made a deposit of $5,000; on October 10, 2006 he made a deposit of $8,000; on November 3, 2006 he made a deposit of $8,000; on February 15, 2007 he made a deposit of $9,000; on February 22, 2007 he made a deposit of 9,500; on March 1, 2007 he made a deposit of $8,000; on March 8, 2007 he made a deposit of $8,000; on March 19, 2007 he made a deposit of $9,000; on March 28, 2007 he made a deposit of $8,000; on April 3, 2007 he made a deposit of

---

[1]"Structuring, also known as 'smurfing,' involves engaging in a series of cash transactions, each under the reporting ceiling of $10,000.00, at different banks on the same or different days or at the same bank on different days, for the purpose of moving a large aggregate of funds through financial institutions while avoiding the currency reporting requirements." *U.S. v. All Funds on Deposit in Great Eastern Bank Account No. 1100817 in Name of Hadson Toko Trading Co., Ltd.*, 804 F.Supp. 444, 445 n. 2 (E.D.N.Y. 1992).

ORDER - 3

$9,000; on March 11, 2007 he made a deposit of $8,000; on March 24, 2007 he made a deposit of $5,000; on June 7, 2007 he made a deposit of $8,000; on June 26, 2007 he made a deposit of $8,000; on July 3, 2007 he made a deposit of $9,000; on July 10, 2007 he made a deposit of $9,000; on July 24, 2007 he made a deposit of $8,000; on August 1, 2007 he made a deposit of $9,500; and on August 14, 2007 he made a deposit of $9,000.  Ct. Rec. 21, Attachment A.

An overall review of the bank records pertaining to Walsh and his business checking account #XXXXXXX1308 show that between February 11, 2005 and August 15, 2007, Walsh engaged in a total of 50 structured cash deposits totaling $408,000.  Id. at 5-6.  Additional examination of Walsh's bank records revealed that he maintains other accounts at Sterling Savings Bank.  Id. at 2.  Walsh also transferred structured funds from his business checking account #XXXXXXX1308, via checks payable to himself, which were subsequently deposited into a joint checking saving account #XXXXXX6107, which Daniel Walsh maintains with Judith Walsh.  Id. at 2-3.

In 2006, the customer service representative provided Daniel Walsh with a brochure titled "Currency Transaction Reports and Cash Purchases of Negotiable Instruments" "Facts You Should Know."  Id. at 3.  The customer service representative provided the brochure to Daniel Walsh due to the structured nature of his repeated cash deposits.  Id.  The brochure explains that it is a criminal violation to structure currency and contains relevant statutory language.  Id. Specifically, the brochure

stated that in 1970 Congress enacted the Bank Secrecy Act which "requires all banks to report transactions in excess of $10,000 to the Internal Revenue Service by preparing a Currency Transaction Report."[2]  Id.

On August 10, 2007, Yakima Immigration and Customs Office of Investigation (ICE) agents and Internal Revenue Service Criminal Investigation (IRS-CI) initiated an investigation.  Bank records were obtained and interviews of Sterling Savings Bank employees were subsequently conducted.  *Id*. at 2.

On September 19, 2007, ICE SSA Susan received a call from Daniel Walsh.  The call was placed on speaker phone and ICE SA Eric Paul was present.  *Id*. at 3. Mr. Walsh indicated his call was to find out why ICE had seized money from his bank account.  *Id*.  Mr. Walsh initially expressed confusion as to why ICE seized the funds, but also stated "I try to keep my deposits under $10,000 to avoid problems, if that is what this is about."  *Id*.  At no time prior to this statement did SSA Susan or SA Paul mention the amount of $10,000.

### III.   SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), cert. denied, 423 U.S. 1025 (1975). Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment where the documentary evidence produced by

---

[2]Under 31 C.F.R. § 103.22 a financial institution must file a CTR for any transaction involving currency of more than $10,000.00.

the parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 (1986); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985).  Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law.  Anderson, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there are some metaphysical doubt as the material facts." Id.  The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant.  *Matsushita*, 475 U.S. at 587.  Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine disputes regarding other elements of the claim.  *Celotex*, 477 U.S. at 322-23.

## IV. DISCUSSION

Federal law requires financial institutions to file reports with the Treasury Department of any cash transaction exceeding $10,000. 31 U.S.C. § 5313; 31 C.F.R. § 103.22(a) (1995). Federal law also makes it illegal

to structure a transaction for the purpose of evading a financial institution's reporting requirement. 31 U.S.C. § 5324. A person who "willfully" violates the structuring prohibition is subject to criminal prosecution. 31 U.S.C. § 5322.

The Supreme Court recently held that conduct is not "willful" within the meaning of *909 section 5322 unless the defendant knows that his own conduct is unlawful. *Ratzlaf v. United States*, 114 S.Ct. 655, 657 (1994). The *Ratzlaf* Court reasoned that because section 5324 itself prohibited purposeful structuring and section 5322 authorized prosecution only for willful structuring, a prosecution under section 5322 required more than a purpose to circumvent the reporting obligation. *Id.* at 658. More specifically, the Court reasoned that to avoid rendering the willfulness requirement of section 5322 mere surplusage, section 5322 must be interpreted to require proof that the defendant acted with knowledge that his structuring was unlawful. *Id.* at 659. The *Ratzlaf* majority suggested that knowledge of illegality can be inferred from evidence of the defendant's conduct. *Id.* at 663 n. 19. Because the district court in *Ratzlaf* had instructed the jury that the government did not have to prove that the defendant acted with knowledge that structuring was unlawful, the Court reversed and remanded for further proceedings consistent with its opinion. *Id.* at 663.

First, the court finds that the government's position is convincing in that Walsh's structuring of deposits and his statement to SSA Susan clearly indicate that he knew that some kind of report would have to be

ORDER - 7

filed, and section 5324 does not require more specific knowledge. As such, the $155,000 deposited by Walsh is subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(A), which provides:

> [T]he following property is subject to forfeiture to the United States:
> (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 5313(a) or 5324 of title 31....

Daniel Walsh need not have known that structuring itself was illegal; the only scienter required for a violation of § 5324(3) is that the violating party "had knowledge of the reporting requirements and acted to avoid them." *United States v. 316 Units of Municipal Securities in the Name of Efrain Gonzalez*, 725 F.Supp. 172, 179 (S.D.N.Y.1989); *accord United States v. Hoyland*, 914 F.2d 1125, 1128-29 (9th Cir.1990); *United States v. Scanio*, 900 F.2d 485, 489-91 (2d Cir.1990) (both involving criminal forfeitures). Although Mr. Walsh has no recollection of receiving or reading the brochure described in paragraph 10 of the government's Statement of Material Facts, he concedes he had a general knowledge of a reporting requirement for $10,000 cash. Ct. Rec. 24 at 3.

Although Walsh does not concede intent to evade the reporting requirements, the court finds the government satisfied its burden of establishing probable cause for forfeiture of the funds at issue based on evidence that bank employees informed Mr. Walsh of the need to report bank transaction exceeding $10,000 and on evidence that the 19 transactions were broken down into amounts of less than $10,000. 18 U.S.C.A. § 981(a)(1); 31 U.S.C.A. §§ 5313(a), 5324(3). Once the

ORDER - 8

government establishes probable cause for forfeiture encompassing both the prohibited conduct and the mental state required by the statute, the burden then shifts to the claimant to prove by a preponderance of the evidence that factual predicates for forfeiture had not been met. See *United States v. 316 Units of Municipal Securities in the Name of Efrain Gonzalez*, 725 F.Supp. 172, 177 (S.D.N.Y.1989).

A "remote possibility" that the forfeited property is not traceable to a transaction structured to avoid reporting requirements is insufficient to "vitiate a strong probability, and neither will it create a preponderance of the evidence against a far more reasonable conclusion." *United States v. $83,230 in United States Currency & $40 in Canadian Currency*, 682 F.2d 573, 577-78 (6th Cir.1982). Summary judgment is inappropriate, however, where the claimant establishes that a genuine issue of material fact exits as to one of the required elements, such as the mental state. 316 Units, 725 F.Supp. at 179. The claimant has not offered evidence suggesting that he did not know of the reporting requirement. Claimant's voluntary statement to SSA Susan regarding the $10,000 amount also supports a reasonable inference, for purposes of the civil forfeiture provisions, that he knew that his own conduct was unlawful. Accordingly, the court concludes that summary judgment is appropriate on the issue of whether claimants engaged in the structuring of a currency transaction on nineteen occasions from September 14, 2006 to August 14, 2007, totaling $155,000.00.

As to the issue of whether the forfeiture of $155,000 violates the

ORDER – 9

Excessive Fine Clause of the Eighth Amendment to the United States Constitution, the court looks at case law post-1989, as prior to this date the Clause received scant attention. *U.S. v. 829 Calle de Madero, Chaparral, Otero County, N.M.*, 100 F.3d 734, 736 (10th Cir.1996). The Clause limits the Government's power to extract payments, whether in cash or in kind, as punishment for some offense. *Austin v. United States*, 509 U.S. 602, 609-610, 113 S.Ct. 2801, 2805-2806, 125 L.Ed.2d 488. A punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the offense that it is designed to punish. Although the proportionality principle has always been the touchstone of the inquiry, *see, e.g.*, *Austin*, at 622-623, 113 S.Ct. at 2812-2813, the Clause's text and history provide little guidance as to how disproportional a forfeiture must be to be "excessive." In *U.S. v. Bajakajian*, 524 U.S. 321, 337 (1998) the Supreme Court, for the first time, announced that the test for violation of the Excessive Fines Clause is whether a punitive forfeiture is grossly disproportional to the gravity of the defendant's offense.

The *Bajakajian* Court concluded that "[t]raditional in rem forfeitures were ... not considered punishment." Id. at 331. The Court expressly stated that "[b]ecause they were viewed as nonpunitive, such forfeitures traditionally were considered to occupy a place outside the domain of the Excessive Fines Clause." *U.S. v. Ahmad*, 213 F.3d 805, 813 (4th Cir.2000). The *Bajakajian* Court noted, however, that because "some recent federal forfeiture laws have blurred the traditional distinction

between civil in rem and criminal in personam forfeiture," not "all modern civil in rem forfeitures are nonpunitive." *Bajakajian*, 524 U.S. at 331 n. 6.

From *Bajakajian,* a two-part analysis can be distilled to determine whether the Excessive Fines Clause restricts the Government's ability to collect civil penalties. First, the Court must determine whether the recovery sought is remedial or punitive.[3] Id. at 328. Secondly, if the Court finds the remedy to be punitive, it must then decide whether the recovery sought is grossly disproportionate to the gravity of the offense. Id. at 334, 118 S.Ct. 2028. In making these decisions the Court must be mindful of the Supreme Court's caveats: (1) "that judgments about the appropriate punishment for an offense belong in the first instance to the legislature," and (2) that "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." Id. at 336, 118 S.Ct. 2028.

The evidence in the instant case reveals an aggregate of structured deposits to the tune of $408,000, occurring in 50 structured deposits. Of that sum, $155,000 (approximately 38% of the total) is before the court. There is no evidence suggesting that the funds were generated as the result of illegal activities. The court requests supplemental briefing on the issue regarding whether forfeiture of $155,000 is punitive and if so, is the forfeiture proportional to the gravity of

---

[3]It is important to emphasize that the distinction is between remedial and punitive, not between civil and criminal. Austin v. United States, 509 U.S. 602, 610, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

ORDER - 11

claimants' conduct or in violation of the Excessive Fines Clause? Moreover, can the court decide the amount which should be forfeited and if so, what standards should apply?

**IT IS ORDERED:**

1.   The United States' Motion for Summary Judgment Pursuant to Rule 56(c) Fed.R.Civ.P., Ct. Rec. 19, filed July 2, 2008 is **GRANTED in part.** The court finds that claimants engaged in the structuring of a currency transaction on nineteen occasions from September 14, 2006 to August 14, 2007, totaling $155,000.00 in violation of 31 U.S.C. §5324.

2.   The court requests that the parties provide supplemental briefing of no more than fifteen (15) pages regarding whether $155,000 is a constitutionally excessive fine.   The briefing shall be due on or before **September 30, 2008.**

The District Court Executive is directed to file this Order and provide copies to counsel.

**DATED** this 4th day of September, 2008.

                                    *s/Lonny R. Suko*
                        _____
                              LONNY R. SUKO
                        UNITED STATES DISTRICT JUDGE

ORDER - 12